IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**VICTOR J. TILLINGHAST**,

    Plaintiff,

v.

**CAROLYN W. COLVIN**,
Acting Commissioner of the Social Security
Administration,

    Defendant.
_____

**Civ. No. 3:13-cv-00820-MC**

**OPINION AND ORDER**

**MCSHANE, Judge**:

    Plaintiff Victor J. Tillinghast brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) and supplemental security income payments (SSI) under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). The issue before this Court is whether the ALJ erred in evaluating the opinion of examining psychologist, Dr. Tongue. Because the ALJ articulated sufficient reasons supported by substantial evidence in the record for partially rejecting Dr. Tongue's opinion, the Commissioner's decision is AFFIRMED.

## PROCEDURAL AND FACTUAL BACKGROUND

    Plaintiff applied for DIB and SSI on January 12, 2004, alleging disability since April 2, 2002. Tr. 47. These claims were denied initially and upon reconsideration. Tr. 47. Plaintiff timely requested a hearing before an administrative law judge (ALJ), and appeared before the

1 – OPINION AND ORDER

Honorable Tim Terrill on December 16, 2005. Tr. 239–71, 306. ALJ Terrill denied plaintiff's claims by written decision dated March 18, 2006. Tr. 47–52.

Plaintiff then filed new applications seeking DIB and SSI, alleging disability since April 2, 2002 (later amended to March 19, 2006). Tr. 106, 276, 306. These claims were denied initially and upon reconsideration. Plaintiff timely requested a hearing and appeared before the Honorable Riley Atkins on January 13, 2010. Tr. 272–302. ALJ Atkins denied plaintiff's claim by written decision dated February 4, 2010. Tr. 15–22. Plaintiff sought review from the Appeals Council, which was subsequently denied. Tr. 56–58. Plaintiff appealed the matter to this Court, and on September 29, 2011, this Court remanded the matter for further proceedings. Tr. 321–41 (Tillinghast v. Astrue, No. 3:10–CV–1113–MA, 2011 WL 4625689, at *8 (D. Or. Sept. 29, 2011)). Pursuant to this remand, the ALJ was instructed to: "include a further medical examination of plaintiff's knees, and a psychological evaluation of plaintiff's ability to maintain concentration, persistence, and pace in the workplace." Tr. 340.

Plaintiff appeared a second time before ALJ Atkins on December 26, 2012. Tr. 453–76. ALJ Atkins denied plaintiff's claim by written decision dated February 6, 2013. Tr. 306–17. Plaintiff sought review from the Appeals Council, which was subsequently denied, thus rendering the ALJ's decision final. Plaintiff now seeks judicial review.

Plaintiff, born on August 3, 1955, tr. 169, 276, obtained a bachelor of arts in theology, tr. 277, and worked most recently as a senior operations technician for Wells Fargo (1995–2002), tr. 101, 134, 472. Plaintiff was fifty at the time of alleged disability onset, tr. 169, 276, and fifty-seven at the time of the most recent administrative hearing, tr. 467.[1] Plaintiff alleges disability

---

[1] Plaintiff was a "[p]erson closely approaching advanced age" at the time of alleged disability onset, *see* 20 C.F.R. § 404.1563(d), and a "[p]erson of advanced age" at the time of the most recent administrative hearing, *see* 20 C.F.R. § 404.1563(e).

2 – OPINION AND ORDER

due to osteoarthritis of the right knee and degenerative disk disease of the cervical spine.[2] *See* tr. 118, 309.

## STANDARD OF REVIEW

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence on the record. *See* 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

## DISCUSSION

The Social Security Administration utilizes a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof rests upon the claimant to meet the first four steps. If a claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner for step five. 20 C.F.R. § 404.1520. At step five, the Commissioner's burden is to demonstrate that the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id*.

Plaintiff contends that the ALJ erred in evaluating the opinion of examining psychologist, Dr. Tongue. Pl.'s Br. 6–11, ECF No. 17. Defendant, in response, argues that the ALJ provided specific and legitimate reasons to reject Dr. Tongue's opinion. Def.'s Br. 5–8, ECF No. 18. This Court looks to the record.

---

[2] Plaintiff cites additional limitations not listed as severe impairments by the ALJ, including: head and neck tremors; arthritis; and spinal stenosis. Pl.'s Br. 2–3, ECF No. 17.

In May 2012, Dr. Tongue met with plaintiff and administered the Repeatable Battery for the Assessment of Neuropsychological Status (RBANS).[3] *See* tr. 375–78. Based on the RBANS findings, Dr. Tongue diagnosed plaintiff with Cognitive disorder NOS[4] and major depression recurrent–moderate, without psychotic features.[5] Tr. 378. Dr. Tongue also indicated that plaintiff's "cognitive difficulties would suggest that his capacity for maintaining the concentration, persistence, and pace necessary for employment would be considerably affected." Tr. 378.

Dr. Tongue, having met with plaintiff a single time, is not a treating physician. *See, e.g.*, *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1038 (9th Cir. 2003) (indicating that an ongoing treatment relationship with a claimant is a key factor in determining whether a physician is treating). "To reject his opinion, the ALJ had to give clear and convincing reasons." *Reginnitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1298 (9th Cir. 1999) (citation omitted). "Even if contradicted by another doctor, the opinion of an examining doctor can be rejected only for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* (citation omitted). In according "limited weight" to Dr. Tongue's opinion, tr. 310, the ALJ articulated clear and convincing (and specific and legitimate) reasons supported by substantial evidence in the record.

---

[3] RBANS "is a broad range but abbreviated battery of neurocognitive functioning which includes individual subtests of list learning, story memory, copy of complex figure, judgment of line orientation, confrontation naming, semantic fluency, digit span, a coding task, and delayed list and story recall, as well as delayed recall of a complex figure." Tr. 377.

[4] "Cognitive Disorder Not Otherwise Specified" includes "disorders that are characterized by cognitive dysfunction presumed to be due to the direct physiological effect of a general medical condition that do not meet the criteria for any of the specific deliriums, dementias, or amnestic disorders listed in this section . . . ." *Diagnostic and Statistical Manual of Mental Disorders* 179–80 (rev. 4th ed. 2000).

[5] "The essential feature of Major Depressive Disorder is a clinical course that is characterized by one or more Major Depressive Episodes without a history of Manic, Mixed, or Hypomanic Episodes. *Diagnostic and Statistical Manual of Mental Disorders* 369 (rev. 4th ed. 2000).

4 – OPINION AND ORDER

First, the ALJ accorded "significant weight" to Dr. Wicher's opinion. Tr. 311. On July 24, 2012, Dr. Wicher met with plaintiff and administered a neuropsychological screening examination (NSE).[6] Tr. 403–11. In reliance on the NSE results and a review of the records from Dr. Tongue and M.D. Webster, tr. 403, Dr. Wicher diagnosed plaintiff with a Full Scale I.Q. Score of 72 (Borderline Range of intellectual ability) and 294.9 Cognitive Disorder Not Otherwise Specified, tr. 406–407. However, "[b]ecause of the inconsistencies between [plaintiff's] clinical presentation, report of activities of daily living, and test results, it cannot be concluded that [plaintiff] currently suffers from a Cognitive Disorder, although there is always the possibility that he has a cognitive condition." Tr. 407–408. Dr. Wicher concluded that plaintiff's impairment did not affect his ability to understand, remember, carry out instructions, and/or interact appropriately with supervision, co-workers, and the public. Tr. 409–10.

To the extent that Dr. Tongue's opinion conflicts with that of Dr. Wicher,[7] the ALJ explicitly relied on Dr. Wicher's opinion. Tr. 310–11; *see also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (finding that "Dr. Schatz's opinion alone constitutes substantial evidence, because it rests on his own independent examination of Tonapetyan." (citation omitted)). The NSE, unlike the RBANS, constituted a "thorough examination." Tr. 310; *see also* tr. 377 (identifying limitations in the RBANS).[8] Moreover, the ALJ noted that Dr. Tongue's

---

[6] Psychological testing consisted of: "the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV); the Wechsler Memory Scale-Fourth Edition (WMS-IV); the Reitan-Indiana Aphasia Screening Test; the Trail Making Test; and the 21-item Test; and a clinical interview with the patient, during which both mental status and social history information [was] obtained." Tr. 403.

[7] The primary difference between the respective opinions is that Dr. Tongue opined that plaintiff's "cognitive difficulties would suggest that [plaintiff's] capacity for maintaining the concentration, persistence, and pace necessary for employment would be considerably affected." Tr. 378.

[8] Dr. Tongue noted that "[t]hese scores suggested the possibility of an early dementia or other cognitive disorder, but a more detailed neuropsychological examination would be necessary in order to more fully establish the degree to which this patient is suffering from cognitive impairment." Tr. 377; *see also* tr. 378 ("It is likely that a more thorough neurocognitive evaluation would more clearly illustrate the degree to which the patient is suffering from cognitive impairment.").

5 – OPINION AND ORDER

report "gives only minimal detail regarding daily activities, social functioning, and concentration in daily life." Tr. 310; *see also Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989) ("[T]he ALJ need not accept a . . . physician's opinion which is brief and conclusionary in form with little in the way of clinical findings to support [its] conclusion." (citation and internal quotation marks omitted)).

Second, the ALJ identified evidence of malingering behavior.[9] *See* tr. 314. On May 18, 2012, Dr. Webster met with plaintiff and administered a comprehensive musculoskeletal evaluation. Tr. 387–402. During the evaluation, Dr. Webster noted "[t]here are multiple instances of poor effort and inconsistencies." Tr. 391. For example, plaintiff "would limp periodically with one leg and then the other." Tr. 392; *see also* tr. 394.[10] Dr. Wicher, who met with plaintiff in July 2012, also noted possible malingering behavior. Dr. Wicher stated:

> Mr. Tillinghast performed poorly on tests of effort, performing below chance on the forced choice portion of the 21-item Test and achieving a Reliable Digit Span of only 6, raising questions about whether he may have been attempting to present himself as more cognitively impaired than is likely to be the case. In addition, his wife left a voicemail message prior to the evaluation stating that Mr. Tillinghast had returned from his examination with Dr. Tongue in May 2012 feeling pleased because he had "faked" the test results.[11] Consequently, his current test results may have been influenced by inconsistent effort and may under-represent his true abilities.

---

[9] This evidence of malingering behavior is particularly important because both the RBANS and the NSE were based on plaintiff's good faith participation. *See Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1222 (9th Cir. 2010) (finding that an ALJ gave specific and legitimate reasons for partially rejecting a physician's opinion where the opinion was "based almost entirely on the claimant's self-reporting.").

[10] As to plaintiff's motor strength/muscle bulk and tone, Dr. Webster found:

> Good bulk and tone throughout. Motor strength in my opinion was 5/5 throughout, although very, very poor effort. The best example was grip strength. 4 psi on the right, 2 psi on the left. Then I had [plaintiff] grasp my fingers as hard as he could and try to prevent me from moving his arms around. His grip strength was variable and minimal.

Tr. 394.

[11] In January 2013, plaintiff's wife, Terry Tillinghast, submitted a brief, unsworn statement indicating that she had misinterpreted a statement by her husband ("he said he did quite poorly on the test") as meaning that he "faked" the test. Tr. 374.

6 – OPINION AND ORDER

Tr. 407. Dr. Wicher further elaborated:

> [Plaintiff] reports symptoms of concentration and memory deficits, but with no clear etiology for these complaints and with rest results which raise questions about whether he may be attempting to present himself as more cognitively impaired than is actually the case . . . . Because of the inconsistencies between his clinical presentation, report of activities of daily living, and test results, it cannot be concluded that he currently suffers from a Cognitive disorder . . . .

Tr. 407–408. Plaintiff acknowledged that he had guessed on parts of the IQ test and stated that he considered himself smarter than someone with a borderline IQ. Tr. 311 (citing 464–65). These reasons are sufficient to reject Dr. Tongue's opinion to the extent that it is inconsistent with the RFC.[12]

## CONCLUSION

For these reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

DATED this 5th day of August, 2014.

_____s/ Michael J. McShane_____
**Michael J. McShane
United States District Judge**

---

[12] As to plaintiff's RFC, the ALJ found:

> [T]he claimant has the residual functional capacity to perform light work . . . except: he should not stand and walk more than two hours total in an eight-hour day; he can occasionally bend, stoop, crawl, climb, and kneel; and occasionally reach overhead.

Tr. 312.
7 – OPINION AND ORDER